UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MELISSA LOOMIS, | ) No. ED CV 10-01521-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

considered the treating psychiatrist's opinion;
2. Whether the ALJ provided a complete assessment of Plaintiff's residual functional capacity; and
3. Whether the ALJ posed a complete hypothetical question to the vocational expert.

(JS at 2.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ CORRECTLY ASSESSED PLAINTIFF'S**

**MENTAL RESIDUAL FUNCTIONAL CAPACITY**

Plaintiff raises three issues in this litigation, each of which relates to the asserted error committed by the ALJ in failing to properly assess the opinion of her treating psychiatrist, Dr. Leonard. This question is posed as Issue No. 1. Related to that is Plaintiff's assertion that the ALJ failed to provide a complete assessment of her mental residual functional capacity (Issue Two), and the third issue is that in failing to properly consider Dr. Leonard's diagnosis, the ALJ posed an incomplete hypothetical question to the vocational expert ("VE").

The Court will address each of these issues in this section.

**A.    Applicable Law**.

   **1.    Mental Impairment**.

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4)

and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

3

activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.  Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF.  The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition.  These categories are None, Mild, Moderate, Marked, and Extreme.  (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

4

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

**2. General Assessment of Functioning ("GAF").**

The GAF scale is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (See 20 C.F.R. §§416.905, 416.920(c)(2006).)

GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the severity assessment set forth in Social Security regulations. (See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 33 (4th Ed. 2000).

**B. Summary of Facts and ALJ's Decision.**

As Plaintiff notes, she received an Adult Intake Assessment at the Riverside County Department of Mental Health ("Riverside Mental Health"), on December 7, 2007. (AR 118.) At that time, a GAF of 48

was assessed. (Id.) In addition, there was a mental status examination performed as part of that process, in which Plaintiff self-reported that she was having auditory and visual hallucinations, poor insight and judgment, and poor insight control. (AR 122.)

On February 4, 2008, Dr. Leonard completed an Initial Psychiatric Assessment, in which she diagnosed Plaintiff with bipolar disorder, Type II; post-traumatic stress disorder (chronic); ruling out borderline IQ. Her GAF was noted to be 45. (AR 147.)

Plaintiff does not discuss, however, the chronological treatment notes from Riverside Mental Health noted in the record, which indicate substantial improvement under medication and treatment. (AR 226-227, 232, 235, 241-245, 253.) As an example, the treatment note from December 11, 2008 (AR 241), reveal appropriate appearance; appropriate mood, although anxious; appropriate affect; appropriate attention and concentration; and appropriate speech. No hallucinations, delusions, sleep problems, appetite problems, or drug or alcohol abuse are noted. Plaintiff was adherent to medication, with no side effects. Plaintiff indicated that the medication Strattera was helping her. (Id.) In the same report, Plaintiff indicated that her financial aid was approved to continue classes in business administration; that her relationships were going well, and that she had noticed a big difference with her medication.

Subsequent mental status examinations, such as one conducted in August 2009 by Dr. Leonard, indicated that Plaintiff had judgment and insight within normal limits. (AR 226.)

At no time did Dr. Leonard ever provide an opinion regarding Plaintiff's mental functional capacity.

The ALJ took testimony from a medical expert ("ME"), Dr.

Glassmire. Based on Dr. Glassmire's review of the records, he concluded that Plaintiff could perform simple repetitive tasks with no public interaction; that she could have non-intense interaction with co-workers and supervisors; and she could not perform tasks requiring hyper-vigilance. (AR 269.)

In his decision, the ALJ noted Plaintiff's testimony regarding hearing voices, anger outbursts, irritability, mood swings, and anxiety. (AR 14.) Nevertheless, he found that Plaintiff's testimony failed to credibly establish functional limitations greater than the conclusions he reached in his decision.[2] Dr. Glassmire provided testimony that Plaintiff had a bipolar disorder and post-traumatic stress disorder which was secondary to childhood molestation and other traumatic events. He noted that Plaintiff had anger problems but at times was within normal limits. Her hallucinations as reported appeared to be controlled by medication, and thus she would be able to behave appropriately in the workplace.

The ALJ's assessment of Plaintiff's mental functional abilities (denominated mental residual functional capacity ["MRFC"]) found mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence or pace; and no experienced episodes of decompensation. (AR 12-13.)

**C. Analysis.**

While Plaintiff's complaint is that the ALJ ignored the conclusions of her psychiatrist, Dr. Leonard, which Plaintiff asserts

---

[2] Plaintiff does not contest the ALJ's credibility assessment.

7

demonstrate a more significant level of mental impairment than the ALJ allowed, the Court does not find that the ALJ either ignored Dr. Leonard's reports, or, more importantly, that he disputed them. With regard to acknowledging these reports, the decision indicates that he in fact did review them. (See AR at 15.) As to the question of whether Dr. Leonard in fact diagnosed more substantial restrictions than did the ALJ, the Court's review of Dr. Leonard's treatment notes indicates that this is not the case. As noted, Dr. Leonard never formally assessed mental functional limitations. But in any event, the treatment notes support a longitudinally based conclusion that Plaintiff responded well to medication and treatment, and a diagnosis of her mental condition which is less restrictive than that reflected in the ALJ's conclusions. Further, Plaintiff's focus on the GAF scores is misplaced.

Moreover, the Court finds that the testimony of the ME at the hearing is supported by the longitudinal treatment records, and the ALJ was correct in relying on this testimony in assessing Plaintiff's MRFC. (See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).)

The determination of this issue controls the result as to the remaining two issues. The second issue questions whether the ALJ provided a complete assessment of Plaintiff's MRFC. As noted in the Court's analysis under its discussion of the first issue, the ALJ followed the correct procedures in determining Plaintiff's mental capacities. Further, the hypothetical question posed to the VE at the hearing (see AR at 272) adequately and correctly summarized the applicable mental limitations so that the VE could provide a response at Step Five of the sequential evaluation process. (AR 272-273.) For this reason, Plaintiff's third issue, which questions the adequacy of

| | |
|---|---|
| 1 | the hypothetical question posed to the VE, is without merit. |
| 2 | For the foregoing reasons, the decision of the ALJ will be |
| 3 | affirmed.  The Complaint will be dismissed with prejudice. |
| 4 | **IT IS SO ORDERED.** |

DATED: June 20, 2011                    /s/
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE